UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JED C. ADELMAN,

              Plaintiff,

   -against-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

              Defendant.
---------------------------------------------------------------X
FEUERSTEIN, District Judge:

FILED
CLERK

9/19/2016 3:08 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**OPINION AND ORDER**
14-cv-5826 (SJF)

*Pro se* plaintiff Jed Adelman ("Plaintiff") brought this action against the Acting Commissioner of Social Security (the "Commissioner"), after multiple administrative hearings, decisions and appeals spanning approximately ten (10) years, challenging the Commissioner's ruling that Plaintiff must repay the Social Security Administration ("SSA") $10,102.80 in child's insurance benefits that he received between February 2002 and March 2003.  The Commissioner has moved for judgment on the pleadings (Dkt. 26); Plaintiff has filed opposition to the Commissioner's motion (Dkt. 28), which is construed as a cross-motion under Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, the Commissioner's motion is denied, and Plaintiff's cross-motion is granted insofar as the Court finds that Plaintiff is not liable for the $10,102.80 repayment.

**I.      BACKGROUND**

Plaintiff became eligible for insurance benefits under his father's Social Security account beginning in September 1999, and subsequently became eligible for Social Security Income benefits.  (Transcript of Administrative Record (Dkt. 30–31) ("Tr.") at 15, 150–51).  According to Plaintiff's mother, who acted as his representative payee, Plaintiff is "severely learning

disabled," has neurological damage, epilepsy, and an IQ score of 62.  (*Id.* at 217–21, 329).

Since February 2001, Plaintiff has been employed as a laboratory technician at Stony Brook University.  (*Id.* at 26, 113).  Among other things, Plaintiff delivers packages throughout the university and prepares hospital rooms before and after treatment.  (*Id.* at 113).  Since March 2001, he has earned more than nine hundred dollars ($900) per month after deducting work-related expenses incurred as a result of his impairments, such as fees for an employment coach.  (*Id.* at 16, 206, 696, 907).

On January 30, 2003, the SSA sent a Work Activity Questionnaire to Plaintiff's employer, who checked a "yes" box indicating that Plaintiff's work was "fully worth the amount paid." (*Id.* at 1094–96).  Less than three (3) months later, the SSA informed Plaintiff that he was no longer deemed disabled under the Social Security Act as a result of his participation in paid work and that he was thus no longer entitled to disability benefits.  (*Id.* at 105–08).  Ultimately, the SSA determined that Plaintiff's employment constituted a "substantial gainful activity" ("SGA")[1] based upon the fact that his earnings exceeded relevant thresholds, and that Plaintiff had thus received Social Security benefits to which he was not entitled.  (*Id.* at 15−16, 267−70).  For example, in a letter dated May 31, 2002, the SSA informed Plaintiff that he had received benefits to which he was not entitled (the "May 2002 Letter").  (*Id.* at 100–04).  The May 2002 Letter allowed Plaintiff to appeal and was later determined to be "pending [the] decision" of an administrative law judge ("ALJ").  (*Id.* at 100, 332).

Plaintiff appealed the SSA's initial determination and appeared through his parents and/or counsel at four (4) administrative hearings between November 2005 and December 2011.

---

[1] SGA is defined as "work activity that involves doing significant physical or mental activities."  20 C.F.R. § 404.1572(a).

2

Initially, Plaintiff sought a waiver for any overpayment at his first hearing on November 9, 2005, during which his parents testified on his behalf.  (*Id.* at 185, 288–95, 498–521).  Following that hearing, the ALJ issued a written decision finding that Plaintiff had received benefits to which he was not entitled and was required to repay the SSA.  Plaintiff requested and received review of the ALJ's decision by the Appeals Council, which remanded the case for further development of the record.  (*Id.* at 29–36, 305, 305A, 393–96).

The second hearing took place on October 15, 2008, and Plaintiff's parents again testified on his behalf.  (*Id.* at 49–67).  The ALJ again denied Plaintiff's request for a waiver, and Plaintiff sought review from the Appeals Council, which again remanded the case for further development of the record.  (*Id.* at 41–45, 597–606).  The third hearing was held on November 1, 2011, and Plaintiff's mother and an attorney appeared on Plaintiff's behalf.  (*Id.* at 1037–44).  This hearing was ultimately adjourned so Plaintiff's job coaching coordinator, Judy Jacobs, could testify.  (*Id.* at 1043–44).  The fourth and final hearing occurred on December 22, 2011, at which Plaintiff's parents and his attorney appeared.  (*Id.* at 76–93).  Ms. Jacobs did not appear at the fourth hearing because, according to Plaintiff's attorney, her employer would not allow her to participate.  (*Id.* 81).

Although Ms. Jacobs did not attend the fourth hearing, the record contains letters from Ms. Jacobs dated May 1, 2003 and August 12, 2011 that were submitted to the Commissioner.  (*Id.* at 113–14, 251).  In her May 1, 2003 letter, Ms. Jacobs set forth the number of hours that Plaintiff's job coach, Adeline Scornello, spent with Plaintiff each month between February 2001 and March 2003, and opined that Plaintiff "needs the ongoing services of his job coach … in order to be successful and keep his job at Stony Brook University."  (*Id.* at 251).  In her August 12, 2011 letter, Ms. Jacobs explained that Plaintiff relied upon Ms. Scornello, "to perform job tasks, interact

3

with other employees and supervisors, find and use natural supports and cues, increase productivity, and communicate effectively with supervisors and peers." (*Id.* at 113). Initially, Ms. Scornello spent the entire day with Plaintiff at the worksite, but as time passed, the she spent only about one-fifth (1/5) of the day with Plaintiff at the worksite. (*Id.*). In her August 11, 2011 letter, Ms. Jacobs indicated that Plaintiff had been in a post-"job-stabilization … extended phase for many years," and that Ms. Scornello was meeting with Plaintiff "at least twice monthly." (*Id.*). If necessary, Ms. Scornello met with Plaintiff for additional time to master new tasks or to work through any problems he was having in the workplace. (*Id.*). Ms. Jacobs concluded that Plaintiff "needs the support and intervention of a job coach to keep him productively employed. He needs his coach for emotional support, judgment issues and to learn new tasks." (*Id.* at 114). Also, Plaintiff "has many accommodations that were put into place to help him perform his tasks." (*Id.*). Plaintiff's mother reinforced this sentiment during the ALJ hearings. (*See id.* at 342 ("Jed cannot work independently because of his disabilities. Without the job coach he cannot be gainfully employed anywhere."); *see also id.* at 80–81, 1040–41). Plaintiff's psychologist also concurred in this assessment. (*Id.* at 1084 ("Although he functions quite well in his job, he nevertheless requires a job coach as well as close supervision in order to perform his responsibilities.")).

Following the fourth hearing, the ALJ issued a decision concluding that Plaintiff received insurance benefits to which he was not entitled and must repay the SSA. (*Id.* at 20–28). Plaintiff requested review by the Appeals Council which, on August 12, 2014, granted review and issued the Commissioner's final decision. (*Id.* at 11-19, 37–38). The Appeals Council determined that Plaintiff had been overpaid $10,102.80 in benefits between February 2002 and March 2003, denied Plaintiff's request for a waiver, and held that Plaintiff was liable to repay that sum. (*Id.* at 19). The Appeals Council concluded, in pertinent part, that: (1) Plaintiff had completed a trial work

4

period in October 2001; (2) effective November 2001, he was no longer disabled under the Social Security Act due to his participation in SGA; (3) effective February 2002, Plaintiff was no longer entitled to benefits due to his participation in SGA; (4) Plaintiff was overpaid $10,102.80 in benefits from February 2002 through March 2003; and (5) Plaintiff was liable for repayment of $10,102.80. (*Id.* at 17–19).

Following the Commissioner's final decision, Plaintiff commenced this action and the parties each moved for judgment on the pleadings. The Commissioner seeks affirmation of its decision, and Plaintiff seeks a reversal of the Commissioner's decision.

## II. DISCUSSION

### A. Standards of Review

#### 1. *Pro Se* Status

In light of Plaintiff's *pro se* status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This leeway, however, does not excuse Plaintiff "'from compliance with relevant rules of procedural and substantive law.'" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. Nov. 1981) (per curiam)).

#### 2. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to a motion to dismiss under Rule 12(b)(6). *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, to survive a Rule 12(c) motion, the complaint must plead

5

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In undertaking this analysis, the Court construes "the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The Court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

### 3.     Review of Determinations by the Commissioner

A court's review of the ALJ's decision is "very deferential." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). Courts do not reweigh the evidence or substitute its judgment for the ALJ's. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Instead, a court's role is to determine whether the ALJ's findings are supported by "'substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)), *superseded by statute on other grounds*, 20 C.F.R. § 404.1560. "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). Thus, if the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld. *See id.*

To determine whether substantial evidence supports the ALJ's findings, a court must "'examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (per

curiam) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, this standard of review does not apply to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Ultimately, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

### B. Evaluation of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability benefits are only available where an individual has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The Commissioner applies a five (5)-step rubric when determining whether a claimant is disabled under the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i) & (b). "Substantial work activity . . .

involves doing significant physical or mental activities." *Id.* § 416.972(a). "Gainful work activity . . . is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b). If Plaintiff does not meet his burden at step one, the inquiry ends, and the Court need not consider step two. *See id.* § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."); *id.* § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the Commissioner concludes that a claimant has been paid benefits to which he was not entitled, the Commissioner will generally attempt to recoup the overpayment unless the claimant shows that (1) he is "without fault" in causing the overpayment and (2) recovery of the overpayment "would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). The purposes of Title II are defeated where recoupment of the overpayment would "deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). Those expenses include payments for necessities such as food, shelter, rent, medical care, and so on. *Id.* § 404.508(a)(1)–(4). Recovery is against equity and good conscience if the claimant, for example, "[c]hanged his or her position for the worse . . . or relinquished a valuable right." 20 C.F.R. § 404.509(a)(1).

8

### C. Application

The crux of Plaintiff's appeal[2] is that: (i) the doctrine of *res judicata* warrants remand (Pl. Br. at 1–9, 12); (ii) the ALJ violated Plaintiff's procedural due process rights in the underlying proceedings (*id.* at 17); (iii) the ALJ and the Appeals Council are not entitled to adjudicate Plaintiff's case *ad infinitum* (*id.* at 50, 60); and (iv) substantial evidence does not support the Appeals Council's decision (*id.* at 1, 3, 13, 28). In defending the Appeals Council's decision, the Commissioner reaches the opposite conclusions. (*See* Def. Reply Br. (Dkt. 29) at 3–11). Though the Court rules in Plaintiff's favor on the fourth argument, it first addresses and rejects Plaintiff's other arguments in order to unequivocally bring closure to a long and tortuous administrative process that has consumed far more governmental resources than can be justified by the sums in dispute.

#### 1. *Res Judicata*

Plaintiff invokes the doctrine of administrative *res judicata*, arguing that the Commissioner already reached a determination on the same facts in the May 2002 Letter. (*See* Pl. Br. at 1, 12). Administrative *res judicata* applies "when the claimant has had a previous disability determination on the same facts and issues, and such determination has become final by either administrative or judicial action." *Amato v. Bowen*, 739 F. Supp. 108, 111 (E.D.N.Y. 1990) (citing 20 C.F.R. § 404.957(c)(1)) ; *see also Martin v. Comm'r of Soc. Sec.*, No. 12-cv-4511, 2013 WL 1663684, at *3 n. 2 (E.D.N.Y. Apr. 17, 2013) (observing that administrative *res judicata* appears narrower than its judicial counterpart). Thus, the Court is confronted with a two-step inquiry: (1) whether the May 2002 Letter concerned the same facts and issues as the

---

[2] After the motions were fully briefed, Plaintiff filed four (4) letters citing alleged deficiencies with the Commissioner's decision. (Dkt. 33–36).

facts and issues present here, and (2) whether that prior determination became final by either administrative or judicial action.

However, the May 2002 Letter was not based upon the same facts and issues as the Appeals Council's August 12, 2014 decision, which is based upon time periods subsequent to May 2002.  (*See* Tr. at 11-19; *Id.* at 19 ("The claimant was overpaid $10,102.80 in benefits from February 2002 through March 2003.")).  Thus, the Commissioner did not "change [her] position for denying the plaintiff his [Social Security disability] benefits."  (Pl. Br. at 4).  Though it is unnecessary to reach the second question, the May 2002 Letter did not constitute final administrative action as it explicitly provided Plaintiff the opportunity to appeal and was "pending [the ALJ's] decision."  (*Id.* at 100, 332).  For these reasons, Plaintiff's *res judicata* argument is without merit.

### 2. Due Process

Plaintiff's argument that his due process rights were violated is also meritless.  (Pl. Br. at 14, 16–17, 23).  Although the Social Security hearing process must meet "'basic requirements of fairness and procedural due process,'" *Anderson v. Bowen*, No. 87-cv-3046, 1989 WL 50825, at *3 (E.D.N.Y. May 2, 1989) (quoting *Diabo v. Sec'y of Health, Educ. & Welfare*, 627 F.2d 278, 281 (D.C. Cir. 1981)), "a full-blown adversarial hearing is not required."  *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).  "[S]o long as the procedures are fundamentally fair," administrative hearings "should be liberal and not strict in tone and operation."  *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971).

Plaintiff claims that the ALJ introduced thirty-three (33) exhibits outside of his parents' presence at the second hearing:

> After the ALJ ended the hearing, my wife and I were dismissed and we left the hearing room. The ALJ then introduced 33 exhibits, apparently to himself without the presence of the claimant's pro se representatives. He included said post hoc exhibits into his decision without providing my wife and I the opportunity to rebut this evidence.

(Pl. Br. at 14; *see also* Tr. at 67). Plaintiff has offered no evidence to support this contention and has not identified which exhibits were supposedly entered and what prejudice, if any, he suffered as a result.

Plaintiff has received four (4) administrative hearings before an ALJ to date, and Plaintiff's parents and/or attorney have been permitted to present Plaintiff's case at each of them. (Tr. at 49–67, 498–521, 1037–44). The Appeals Council conducted reviews of the ALJ's decisions upon Plaintiff's request. (*Id.* at 41–45, 393–96). Furthermore, the ALJ entered various exhibits into the record and also adjourned the third hearing upon the request of Plaintiff's counsel to allow Plaintiff's job coach to testify. (*Id.* at 1–10, 1043); *cf. Pokluda v. Colvin*, No. 13–cv–335, 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (observing that an administrative hearing comported with due process requirements because the claimant "received notifications prior to the hearing explaining the process and her rights" and "attended the hearing, testified, was able to hear and question all witnesses, and was allowed to present evidence").

In any event, the Appeals Council remedied these claims by remanding the case for consideration by a different ALJ in March 2011. (*See* Tr. at 41–45). On remand, the ALJ was directed to obtain documents related to disability benefits, release the listed hearing exhibits, and consider the entire record. (*Id.* at 17, 49). The ALJ followed these instructions and then reached his conclusion. As a result, Plaintiff did not suffer any due process violations.

11

### 3. *Ad Infinitum*

Next, Plaintiff alleges that "[t]he Agency and the Secretary are not entitled to adjudicate a case ad infinitum until the agency correctly applies the proper legal standing and gather evidence to support agency conclusion [*sic*]." (Pl. Br. at 50). "'[A]n ALJ does not have an affirmative duty to expand the record *ad infinitum*. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision.'" *Wilson v. Colvin*, 136 F. Supp. 3d 475, 479–80 (W.D.N.Y. 2015) (quoting *Walker v. Astrue*, No. 11-cv-766S, 2012 WL 4473249, at *3 (W.D.N.Y. Sept. 26, 2012)). However, "delay alone is an insufficient basis on which to remand for benefits." *Bush*, 94 F.3d at 46; *compare Wilson*, 136 F. Supp. 3d at 480 ("The record before the ALJ was voluminous, comprehensive, consistent, and contained objective test results and regular treatment notes from plaintiff's treating physician . . . .") *with Cadet v. Colvin*, 121 F, Supp. 3d 317, 320–21 (W.D.N.Y 2015) (finding "glaring and significant gaps in the record" because it lacked evidence on the plaintiff's medical history and any assessment on the plaintiff's capacity to work "by any treating or examining physician").

In Plaintiff's case, delays were engendered by the need to develop the record, each time at Plaintiff's own request. *See Birkinshaw v. Astrue*, 490 F. Supp. 2d 1136, 1148 (D. Kan. 2007) (remanding to the Appeals Council for further development of the record even though the "case has been delayed and extended by erroneous decision and has previously been remanded by the Appeals Council merely to result in the decision which the court has determined is also erroneous"). Though the SSA's handling of this matter has been far from efficient, Plaintiff's argument that the Commissioner has actively attempted to prolong this case *ad infinitum* is incorrect.

### 4. Substantial Evidence

Plaintiff also asserts that the ALJ and the Appeals Council committed legal error by finding that "if an employee earns over SGA levels, he is not entitled to benefits of [Social Security disability]." (Pl. Br. at 1). As an initial matter, Plaintiff concedes that, at all relevant times, he has "earn[ed] above SGA levels." (Pl. Br. at 3). The relevant SGA monthly salary thresholds were $740 in 2001, $780 in 2002, and $800 in 2003. *See* National Average Wage Index, https://www.ssa.gov/OACT/cola/sga.html (last visited Sept. 12, 2016). Plaintiff earned approximately $962 per month during the relevant time period, thereby placing Plaintiff above the SGA threshold for each relevant month. (Tr. at 16, 206, 696, 907); *see also* 20 C.F.R. § 404.1576(c)(iii)–(iv) (explaining certain wage deductions for impairment-related work expenses).

Nevertheless, Plaintiff claims that his work at Stony Brook during the relevant period should not have been deemed SGA because it was performed under "special conditions." (Pl. Br. at 13). As this courts in this Circuit have recognized, "[w]ork performed under special conditions . . . regardless of the stated level of earnings, indicate that the employee is not working at the SGA level." *Nazzaro v. Callahan*, 978 F. Supp. 452, 461 (W.D.N.Y. 1997). As the party claiming the exception, Plaintiff bears the burden of proof. *Figueroa-Plumey v. Astrue*, 764 F. Supp. 2d 646, 651 (S.D.N.Y. 2011).

Special conditions may exist when an employee:

> (1) require[s] and receive[s] special assistance from other employees in performing [his] work;
>
> (2) [is] allowed to work irregular hours or take frequent rest periods;
>
> (3) [is] provided with special equipment or [is] assigned work especially suited to [the employee's] impairment;

13

>(4) [is] able to work only because of specially arranged circumstances, for example, other persons helped [the employee] prepare for or get to and from your work;
>
>(5) [is] permitted to work at a lower standard of productivity or efficiency than other employees; or
>
>(6) [is] given the opportunity to work despite [the employee's] impairment because of family relationship, past association with [the] employer, or [the] employer's concern for [the employee's] welfare.

20 C.F.R. § 404.1573(c)(1)–(6). Relatedly, courts in the Second Circuit consider "at least six factors . . . including (1) earnings, (2) the nature of the work performed, (3) how well the claimant performs the work, (4) whether the work is done under special conditions, (5) whether the claimant is self-employed, and (6) the amount of time spent working." *Nazzaro*, 978 F. Supp. at 461 (citing *Burkhalter v. Schweiker*, 711 F.2d 841, 844 (8th Cir. 1983)). Although Plaintiff does not rely on a specific subsection of the Code of Federal Regulations or the factors cited in *Nazzaro*, the Court has construed his arguments liberally and determined that Plaintiff's argument is premised upon his reliance on a job coach during the relevant period.

In determining whether work is SGA, a strong indicator is whether "the employee does not fully earn his or her pay (*e.g*., the employee receives unusual help from others in doing the work)." SSR 83-33, 1983 WL 31255, at *4; *cf. EEOC v. CEC Entertainment, Inc.,* No. 98–C–698–X, 2000 WL 1339288 at *2 (W.D. Wis. Mar. 14, 2000) ("The role of a job coach is to assist in teaching the disabled individual the tasks that he is expected to perform, provide on-site supervision during the early phases of the individual's employment, monitor the employee's progress and serve as a liaison between the employee and the employer."), *cited in Brown v. Barnhart*, 418 F. Supp. 2d 252, 261 n.10 (W.D.N.Y. 2005). Even if a claimant's monthly salary exceeds the SGA cut-off levels, "a person may not be performing work at the substantial gainful

14

activity level." *Dyer v. Colvin*, No. 13–CV–6312P, 2015 WL 1458511, at *13 (W.D.N.Y. Mar. 30, 2015) (citing *Caiozzo v. Astrue*, No. 11–CV–2461 (JS), 2012 WL 2921187, at *3 (E.D.N.Y. July 13, 2012)).

The Court finds that Plaintiff's ability to perform at work during the relevant period was contingent upon his having a job coach. Although Plaintiff's employer responded affirmatively in response to the SSA's query regarding whether Plaintiff's work was "fully worth the amount paid" (Tr. at 1096), Ms. Jacobs, Plaintiff's job coaching coordinator, stated, *inter alia*, that Plaintiff "would not succeed on his own." (*Id.* at 114)*; see also Nazzaro*, 978 F. Supp. at 461–62 (remanding the case because even though the claimant's earnings exceeded the SGA cut-off level, the ALJ failed to address whether the assistance of a job coach rebutted the presumption of SGA); *accord Chicager v. Califano*, 574 F.2d 161, 164 (3d Cir. 1978) (finding that the plaintiff did not have the ability to engage in SGA based, in part, on "the unusual assistance he required from co-workers" that made it possible for the plaintiff to keep his job). Although Ms. Jacobs' August 2011 letter indicates that Plaintiff's work has "stabilized" and his job coach was spending much less time with him than she did when he first began working, Ms. Jacobs was clear that Plaintiff "needs the support and intervention of a job coach to keep him productively employed. He needs his coach for emotional support, judgment issues and to learn new tasks." (*Id.* at 114)*; cf. Reen v. Comm'r of Soc. Sec.*, No. 08–1175, 2009 WL 198743, at *5 (W.D. Pa. Jan. 27, 2009) (concluding that the ALJ committed no legal error because "the evidence does not support a finding that Plaintiff's ability to maintain his employment . . . was due to special assistance by a job coach or any other special accommodations by the employer"). Ms. Jacobs also stated that, in addition to his job coach, Plaintiff "has many accommodations that were put into place to help him perform his tasks." (Tr. at 114).

15

Both Plaintiff's mother and his psychologist bolstered the assessment that Plaintiff could not have remained employed without these aids. (*Id.* at 342, 1084). Conversely, the Commissioner's decision that Plaintiff was not working under "special conditions" during the relevant time period is seemingly premised only upon the fact that his employer checked the "yes" box in response to the SSA's January 2003 query regarding whether Plaintiff's work was "fully worth the amount paid." The Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's motion is denied and Plaintiff's cross-motion is granted to the extent that the Court finds that Plaintiff need not repay the SSA the $10,102.80 he received in benefits from February 2002 through March 2003.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Plaintiff's cross-motion is granted to the extent that Plaintiff is not liable for repayment of his February 2002 through March 2003 benefit payments. The Clerk of the Court is directed to serve a copy of this Order upon Plaintiff and to close this case.

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: September 19, 2016
Central Islip, New York

16